15 F.3d 1092
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne Rodney HEIM, Dyan Jones, Steven Robert Britenbach,
Dwayne Keith Fitzen, Defendants-Appellants.
 Nos. 93-30090 to 93-30092, 93-30101.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submission Deferred Nov. 1, 1993.
Submitted Nov. 15, 1993.
Decided Jan. 24, 1994.
 
 1
 Before: TANG, FARRIS and RYMER, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Defendants Wayne Rodney Heim, Dwayne Keith Fitzen, Steven R. Britenbach and Dyan Jones appeal their convictions for conspiracy to distribute controlled substances in violation of 18 U.S.C. Secs. 841(a)(1) and 846. Defendant Britenbach also appeals his convictions under 18 U.S.C. Sec. 1952 on six counts of interstate travel and telephone use in furtherance of racketeering. All four defendants appeal their sentences. In addition, Britenbach appeals the district court's denial of his motion for a continuance. Jones also appeals the district court's denial of her motion for severance. Finally, Heim alleges a due process violation. We have jurisdiction over their timely appeals pursuant to 28 U.S.C. Sec. 1291. We affirm the convictions of all four defendants and the sentences of Heim, Fitzen and Jones. We also affirm the denial of Britenbach and Jones' motions and find no merit in Heim's due process argument. Britenbach's appeal of his sentence is addressed in a separate published opinion.
 
 
 4
 I. Denial of Britenbach's Motion to Continue
 
 
 5
 Britenbach argues that the district court erred in denying his motion to continue the trial because his trial counsel was appointed only forty days before trial. He also contends that the district court improperly relied on the fact that his trial counsel had voluntarily accepted appointment to the case. Britenbach relies upon numerous examples of hearsay that was admitted against him without objection to demonstrate that he was prejudiced by the denial of his motion for continuance.
 
 
 6
 We review the denial of a motion to continue for abuse of discretion. United States v. Robinson, 967 F.2d 287, 291 (9th Cir.1992). In determining whether a denial was fair and reasonable, we consider "whether the continuance would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant." Robinson, 967 F.2d at 291. Before a district court's denial of a continuance will be reversed, "the appellant must establish that the refusal resulted in prejudice to his defense." United States v. Long, 706 F.2d 1044, 1053 (9th Cir.1983).
 
 
 7
 We have reviewed the record. Although the district court did mention that Britenbach's trial counsel "voluntarily undertook the appointment," it also carefully considered the difficulty of preparation for a case of this nature and concluded that forty days was sufficient time. In denying a motion to reconsider, the district court also considered the effect of delay on judicial economy. There were sufficient legitimate reasons to justify the denial of Britenbach's motion.
 
 
 8
 Further, Britenbach's attempt to demonstrate prejudice fails. His claim of hearsay statements included co-conspirator statements that were narrative declarations, not made in furtherance of the conspiracy. Nothing in the record suggests that longer pre-trial preparation would better enable a trial attorney to distinguish between a "mere narration" and a statement made in furtehrance of a conspiracy.
 
 II. Denial of Jones' Motion to Sever
 
 9
 Jones argues that the district court should have granted her motion to be tried separately. Jones' failure to renew her motion to sever at the close of evidence waived the objection on appeal. United States v. Smith, 893 F.2d 1573, 1581 (9th Cir.1990).
 
 
 10
 Even if her motion had been diligently pursued, denial would have been warranted. We review a district court's decision to deny a motion to sever for abuse of discretion. United States v. Cuozzo, 962 F.2d 945, 949 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992). A severance is not required "even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." United States v. Zafiro, 113 S.Ct. 933, 938 (1993). A court should only grant a severance "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Id. One of those situations occurs "if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." Id.
 
 
 11
 Jones contends that, because she was tried with her co-defendants, she could not call them as witnesses on her behalf because they would exercise their privilege against self-incrimination. But, for severance, a defendant must demonstrate that "the co-defendant's testimony is 'substantially exculpatory' in order to succeed." United States v. Mariscal, 939 F.2d 884, 886 (9th Cir.1991). Jones has not explained how anything her co-defendants might have said would be exculpatory.
 
 
 12
 In addition, as in Zafiro, limiting instructions were given. Under the circumstances, this was not an abuse of discretion.
 
 III. Heim's Due Process Argument
 
 13
 Heim argues for the first time on appeal that the conduct of the government prior to his arrest violated his due process right. Because Heim failed to raise this defense before the district court, we review for plain error. See United States v. Duncan, 896 F.2d 271 (7th Cir.1990).
 
 
 14
 Heim contends that he requested permission from his parole officer to leave the Pocatello area so that he could be apart from his twin brother. His parole officer allegedly denied the request because investigation had begun, and the parole officer had been told it would not be in the best interests of the investigation for Heim to leave the area. As a result, Heim claims that the government "compelled his continued association with his criminally inclined brother." Heim's contention is without merit.
 
 
 15
 Due process warrants dismissal of an indictment only where the "government's conduct is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Citro, 842 F.2d 1149, 1152 (9th Cir.), cert. denied, 488 U.S. 866 (1988). "Unsavory conduct" alone will not be grounds for a dismissal. United States v. Allen, 955 F.2d 630, 631 (9th Cir.1992). The government's conduct falls well short of "shocking" and "outrageous."
 
 IV. Sufficiency of the Evidence
 
 16
 Each defendant argues that the trial record established the existence of multiple conspiracies rather than the single conspiracy alleged in the indictment. Jones, Fitzen and Heim also argue that even if a single conspiracy existed, there was insufficient evidence to prove their involvement. Britenbach contends that there was insufficient evidence to convict him on certain counts under the Travel Act, 18 U.S.C. Sec. 1952.
 
 
 17
 There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 A. Defendants' Multiple Conspiracy Theory
 
 18
 All of the defendants argue that there was a variance between the single conspiracy alleged in the indictment and the multiple conspiracies established by the trial record. They contend that the separate conspiracies included (1) the conspiracy to distribute drugs in Pocatello, (2) the conspiracy to negotiate the major drug transaction in Salt Lake City, and (3) the conspiracy between Wallace, Luce and Britenbach which commenced after the arrests of Fitzen and Heim.
 
 
 19
 The question of whether a single conspiracy, rather than multiple conspiracies, has been proven is "essentially a question of the sufficiency of the evidence." United States v. Bibbero, 749 F.2d 581, 586 (9th Cir.1984), cert. denied, 471 U.S. 1103 (1985). To establish the existence of a single conspiracy, " 'the basic test is whether there was one overall agreement to perform various functions to achieve the objectives of the conspiracy.' " United States v. Arbelaez, 719 F.2d 1453, 1457 (9th Cir.1983), cert. denied, 467 U.S. 1255 (1984) (quoting United States v. Zemel, 634 F.2d 1159, 1167 (9th Cir.1980)). Relevant factors include "the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals." Bibbero, 749 F.2d at 587 (9th Cir.1984). The evidence "need not exclude every hypothesis other than a single conspiracy exists." United States v. Patterson, 819 F.2d 1495, 1502 (9th Cir.1987).
 
 
 20
 Wallace testified that Heim and Britenbach were present at the Salt Lake City negotiations, that Fitzen provided Heim with money for the Salt Lake City trip, and that Heim and Fitzen hoped to purchase cocaine at a bulk rate if the Salt Lake City deal went through. He also testified that his dealings with Britenbach after the arrests of Heim and Fitzen were intended, in part, to pay off a drug debt owed by Heim to Britenbach. Michael Luce testified that Jones attempted to procure cocaine from Britenbach. From this testimony alone, a rational jury could find a single conspiracy.
 
 B. Inconsistent Jury Verdicts
 
 21
 Fitzen and Heim also argue that the jury verdict establishes multiple conspiracies. They rely on the jury's having returned guilty verdicts for Britenbach, Heim and Jones of conspiracy to distribute cocaine and marijuana, and against Fitzen for conspiracy to distribute cocaine (and not marijuana). The jury apparently did not precisely follow the judge's instructions. However, this alone does not warrant reversal. United States v. Powell, 469 U.S. 57, 69 (1984) (rejecting the proposition that inconsistent jury verdicts need to be vacated). We have adopted the general rule that "inconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support the guilty verdict." United States v. Marchini, 797 F.2d 759, 765 (9th Cir.1986), cert. denied, 479 U.S. 1085 (1987). The jury verdicts were supported by sufficient evidence.
 
 
 22
 C. Sufficiency of the Evidence With Respect to Individual Defendants
 
 
 23
 Defendants Fitzen, Jones and Heim argue that even if a single conspiracy existed, there was insufficient evidence to convict them of being co-conspirators.
 
 
 24
 Once the existence of a conspiracy is established, "evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with knowing participation in the conspiracy." Bibbero, 749 F.2d at 587. The evidence must "show that [defendant] had knowledge of the conspiracy and acted in furtherance of it. Mere casual association with conspiring people is not enough." United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir. October 5, 1993). The trial record contains sufficient evidence linking each individual defendant with the conspiracy to uphold the guilty verdicts.
 
 
 25
 Jones argues that she should not be considered part of the conspiracy and points to the fact that she never actually picked up any cocaine from Britenbach. However, one can be found guilty of conspiracy to possess and distribute even if no crime of possession or distribution occurred. United States v. Bosch, 914 F.2d 1239, 1241 (9th Cir.1980).
 
 
 26
 Heim also argues that Wallace was not a co-conspirator, and that therefore any of Wallace's activities after Heim's arrest (in February 1992) can not provide evidence of the ongoing conspiracy described in the indictment as ending on May 27, 1992. The argument is without merit. The evidence established that Wallace was a co-conspirator. "The acts and declarations of coconspirators, done or made in furtherance of the conspiracy, are admissible against a conspirator whose participation has terminated because of arrest." United States v. Marques, 600 F.2d 742, 750 (9th Cir.), cert. denied, 444 U.S. 858 (1979).
 
 
 27
 D. Sufficiency of the Evidence on the Travel Act Counts Against Britenbach
 
 
 28
 Britenbach maintains that there was insufficient evidence to convict him of Counts 17, 20, 21, 22, 31 and 34, which alleged violations of the Travel Act, 18 U.S.C. Sec. 19523. The elements of this statute as applied to Britenbach are (1) engaging in interstate travel or using a facility of interstate commerce, (2) with the intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity," and (3) performance or attempted performance of any of the acts specified in (2). 18 U.S.C. Sec. 1952(a)(3). In this context, "unlawful activity" is defined as "any business enterprise involving ... narcotics or controlled substances." 18 U.S.C. Sec. 1952(b).
 
 
 29
 Britenbach reads too much into the requirements of Sec. 1952(a)(3). That section only requires the government to prove that a defendant committed "a subsequent overt act in furtherance of [the] unlawful activity." United States v. Winslow, 962 F.2d 845, 852 (9th Cir.1992) (quotation omitted). This is not a significant hurdle. "Unlike the crime of attempt, the Travel Act does not require that the government establish that the accused took a substantial step in furtherance of the intended unlawful activity." United States v. Jenkins, 943 F.2d 167, 173 (2d Cir.), cert. denied, 112 S.Ct. 659 (1991). It must only show that the defendant "used a facility of interstate or foreign commerce to 'make easier or facilitate' the intended unlawful activity, and thereafter did one additional act in furtherance of the unlawful activity." Id. at 173.
 
 
 30
 With respect to Count 17, the government established that Britenbach (1) travelled from California to Salt Lake City, (2) had the intent of carrying on the conspiracy by negotiating a major drug transaction there, and (3) did in fact meet with Heim and others to negotiate the transaction. For Count 20, the government established that Britenbach (1) travelled from California to Pocatello, (2) had the intent of carrying on the conspiracy, and (3) met with informant Wallace to discuss, among other things, the Heim drug debt. A rational jury could find that Britenbach travelled in interstate commerce in violation of the Travel Act.
 
 
 31
 Counts 21, 22, 31 and 34 involved telephone conversations between Britenbach and Wallace. A rational jury could conclude that the telephone conversations were intended to carry on the conspiracy, and that Britenbach committed the requisite subsequent acts furthering the conspiracy after each telephone conversation.
 
 
 32
 Britenbach's argument that he should be absolved of criminal liability on the telephone counts because the government initiated the telephone calls is without merit. The language of Sec. 1952(a)(3) only requires that a defendant "use" a facility of interstate commerce, not that a defendant initiate the use of such facility. See United States v. Graham, 856 F.2d 756, 760 (6th Cir.1988), cert. denied, 489 U.S. 1022 (1989) ("[T]he Travel Act does not mandate that the defendant place the telephone call to warrant a violation of the Act.").
 
 V. Sentencing Issues
 
 33
 The district court's application of the Sentencing Guidelines is reviewed de novo. United States v. Fagan, 996 F.2d 1009, 1017 (9th Cir.1993). Factual findings in applying the Sentencing Guidelines must be supported by a preponderance of the evidence, United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991), cert. denied, 112 S.Ct. 1564 (1992), and they are reviewed for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 A. Quantity of Drugs in the Conspiracy
 
 34
 The presentence reports indicated that "there is overwhelming evidence that the Fitzen/Heim drug distribution network was distributing a conservative estimate of at least 2 kilograms of cocaine and 15 pounds of marijuana per month during the 12 months of 1991 and the first 2 months of 1992," for a total of 28 kilograms of cocaine and 210 pounds of marijuana. The presentence report also recommended that each defendant (excluding Jones) be attributed an additional 40 kilograms of cocaine relating to the Salt Lake City negotiations. The district court determined that the cocaine portion of the conspiracy involved 28 kilograms of cocaine (the cocaine that was the subject of the Salt Lake City negotiations was disregarded for sentencing purposes). The amounts of marijuana attributable to each defendant ranged from 210 pounds (Jones) to 0 pounds (Fitzen), but had no impact on the base offense level of any defendant.
 
 
 35
 We have reviewed the record. The testimony of various co-conspirators and government undercover agents supports the district court's finding with respect to the amounts of drugs involved in this conspiracy. For example, Wallace testified that Heim told him he made about two trips per month to California to pick up three kilos of cocaine per trip. Luce testified that he was under the impression that Heim and Fitzen had been purchasing at least one kilo of cocaine per month from Britenbach for 18 months.
 
 
 36
 B. Quantity of Drugs Attributable to Each Defendant
 
 
 37
 The quantity of drugs attributable to a particular defendant is based on "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. Sec. 1B1.3(a)(1)(B).
 
 
 38
 The presentence report recommended that Jones be held accountable for the full 28 kilograms of cocaine and 210 pounds of marijuana. Jones argues that the trial court erred in applying these amounts to her because there is no indication of how the estimates of quantity were made and because she was found to be only a "minor participant" in the conspiracy. In its written findings of fact, the court indicated that Jones "should have known or reasonably foreseen the extent of the drug transactions by her co-conspirators when she was in the home while they were arranged, or travelled with Heim during out of state deals." Evidence in the record supports this conclusion. In addition, the court pointed out that it had given Jones a two level reduction in the base offense level due to her relatively minor role in the conspiracy.
 
 
 39
 Fitzen also challenges the 28 kilogram figure. The evidence established that he was more involved in the conspiracy than Jones and that he was the primary distributor of the cocaine in the Pocatello area.
 
 
 40
 Heim argues that he only became involved in the conspiracy with Fitzen in July of 1991, and that therefore the inclusion of the first six months of 1991 was erroneous. The trial court did not err. Evidence in the record indicated that the conspiracy commenced even before 1991.
 
 
 41
 C. Fitzen's Contention that he Accepted Responsibility
 
 
 42
 The district court's determination of whether a defendant has accepted responsibility shall not be disturbed unless it is clearly erroneous and "without foundation." United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990). Fitzen did not plead guilty to the conspiracy count of the indictment, and he very clearly contended that he was not part of the conspiracy. The commentary to Sec. 3E1.1 of the Sentencing Guidelines indicates that the acceptance of responsibility "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse" unless the defendant goes to trial to "assert and preserve issues that do not relate to factual guilt." U.S.S.G. Sec. 3E1.1, comment. (n. 2). The district court's denial of the downward adjustment for acceptance of responsibility was appropriate.
 
 
 43
 D. The District Court's Determination that Fitzen and Heim were Organizers
 
 
 44
 The district court added four points to the baseline levels of Fitzen and Heim because it determined that they were "organizers" of the conspiracy under Sec. 3B1.1 of the Guidelines. Factors to be considered are "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offenses, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. Sec. 3B1.1, comment. (n. 3).
 
 
 45
 Heim was primarily responsible for acquiring the cocaine from Britenbach, he was "grooming" Wallace so that Wallace could make future drug runs on his own, he profited significantly from the drug deals and he was pivotal in the Salt Lake City negotiations. A trier of fact could conclude from the record that Fitzen was the primary distributor in Pocatello. He also profited significantly from the conspiracy.
 
 
 46
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3