UNITED STATES of America,
Plaintiff–Appellee,

v.

Willard Cortez ROBINSON,
Defendant–Appellant.

Nos. 90–10433, 90–10470.

United States Court of Appeals,
Ninth Circuit.

Argued on Sept. 18, 1991.

Opinion Filed April 22, 1992.

Opinion Withdrawn May 12, 1992.

Resubmitted May 29, 1992.

Decided June 15, 1992.

Scott L. Tedmon and Clifford E. Tedmon, Tedmon & Tedmon, Sacramento, Cal., for defendant-appellant.

Frank C. Meyer, Sp. Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before: ALARCON, BOOCHEVER, and NELSON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Willard Cortez Robinson appeals his conviction for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), use of a firearm during the commission of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He contends that the federal prosecution of his case violated his due process rights, that he received ineffective assistance of counsel, and that the district court erred in denying a continuance of trial. He also claims that there was insufficient evidence for his conviction for possession of cocaine, that the

district court erred in computing his sentence, and that he was denied his right to his originally appointed appellate counsel.[1]

## BACKGROUND

Information was received that Robinson, a parolee at large, was dealing in drugs. On April 8, 1988, while investigating another parolee, parole officers searched a motel room in Pinole, California, which was registered to Robinson. The officers found 407.92 grams of cocaine and evidence suggesting drug trafficking activity. On August 17, 1988, based on further information regarding Robinson's drug dealings, parole officers conducted a parole search at an apartment in Sacramento which Robinson had rented since May 12, 1988, under an assumed name. Robinson and Estella Thompson were present during the search. After searching the apartment, the officers seized two guns, ammunition, 158.2 grams of cocaine in a cereal box, 12.5 grams of cocaine base, and $2,800 in cash in a man's jacket. They arrested Robinson.

On April 7, 1989, Robinson was charged in a four-count indictment with (I) possession of cocaine base with intent to distribute, (II) possession of cocaine with intent to distribute, (III) use of a firearm during commission of a drug trafficking offense, and (IV) being a felon in possession of a firearm. The case was set for jury trial. The district court continued the trial date on two occasions. Robinson relieved one appointed counsel and caused the second appointed counsel to withdraw from representation by filing a malpractice suit against him.

Robinson then retained the services of Kapp Nees. Upon approval from the court, Nees continued the trial date to March 26, 1990. The court denied Nees' second request to continue the trial date. Subsequently, Robinson fired Nees for failing to secure defense witnesses and proceeded to represent himself in pro per.

The court denied Robinson's request for a continuance.

On March 29, 1990, the jury convicted Robinson of counts II, III, and IV. The court appointed Carl Larson to represent Robinson for sentencing. After the district court evaluated Robinson's objections to the Presentence Report (hereinafter PSR), it added the 407.92 grams of cocaine found in the Pinole search, to the 158.2 grams of cocaine seized in Sacramento to compute Robinson's base offense level of 26.[2] Furthermore, the district court found that Robinson's criminal record qualified him as a career offender, resulting in an offense level of 34. Robinson's criminal history points were computed to be 14, which led to a criminal history category of VI. The Sentencing Guidelines range for Robinson's offenses was 262 to 327 months imprisonment. Furthermore, 18 U.S.C. § 924(c)(1) mandated a 60–month consecutive prison term for use of a firearm during a drug trafficking crime. The court sentenced Robinson to a term at the top of the Guideline range, plus the 60–month mandatory consecutive term, in order to arrive at a total term of 387 months imprisonment. The court also sentenced Robinson to a five-year term of supervised release.

## DISCUSSION

### I. *Due Process of Federal Prosecution*

◼ Robinson argues that filing this case in federal court was a violation of his right to be charged in the court system of original jurisdiction. In this case the California Department of Corrections Parole Officers conducted the parole search resulting in Robinson's arrest. The case was subsequently referred to the United States Attorney's Office for prosecution. Because this issue was not raised in the court below, we review for plain error. *See* Fed. R.Evid. 103(d); *United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. de-*

---

1. We have also permitted Robinson to file three supplemental briefs. We find no merit in the additional arguments presented in those briefs.

2. In computing the amount of cocaine, the district court also included .18 grams of cocaine base which was discovered during the Pinole search. The court, however, excluded the cocaine base which provided the basis for Count I.

*nied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989).

Robinson claims that because this case originated as a state parole search, it should have stayed in the state court system. Robinson cites *United States v. Williams,* 746 F.Supp. 1076 (D.Utah 1990), *aff'd in part and vacated in part,* 963 F.2d 1337, (10th Cir.1992), for support. *Williams* held that referral for federal prosecution was improper because the police officers within an intergovernmental strike force exercised unfettered discretion as to which cases to refer for federal or state prosecution. *Id.* at 1081. That court reasoned that due process required an objective policy to govern such referral decisions. *Id.* at 1083.

We find Robinson's claim unpersuasive for several reasons. First, the Tenth Circuit has rejected this part of the district court's holding in *Williams* on appeal. *See Williams,* 963 F.2d at 1341–42. In doing so, the Tenth Circuit relied upon *United States v. Andersen,* 940 F.2d 593 (10th Cir.1991), which rejected the proposition that due process required written policies to guide decisions regarding referral for federal prosecution. *Id.* at 596–97.

Second, subsequent to the submission of the instant case, our court has joined the Tenth Circuit and other sister circuits in holding that, absent limited exceptions which are inapplicable here, due process is not violated by the referral of cases for federal rather than state prosecution. *United States v. Nance,* 962 F.2d 860, 864–65 (9th Cir.1992) (per curiam). *See also United States v. Parson,* 955 F.2d 858, 873 n. 22 (3rd Cir.1992) (referral of drug charges for federal prosecution did not violate due process); *United States v. Allen,* 954 F.2d 1160, 1165–66 (6th Cir.1992) (same); *United States v. Carter,* 953 F.2d 1449, 1461–62 (5th Cir.1992) (same). Here, Robinson's case was referred to the United States Attorney's Office for review and prosecution, and we must assume that the United States Attorney exercised proper discretion to prosecute in federal court. Accordingly, we find that Robinson's due process rights were not violated by the referral of his case to federal prosecutors or by their decision to prosecute.

Moreover, in *United States v. Nance,* 962 F.2d at 865, we have recently stated:

Further, even if we detected a due process violation, recent decisions of this court would require us to hold that absent proof of discrimination based on suspect characteristics, we may not review charging decisions made by prosecutors. *See [United States v.] Redondo–Lemos,* [955 F.2d 1296] at 1300–01 [(9th Cir.1992)]; *United States v. Diaz,* 961 F.2d 1417, 1420 (9th Cir.1992) ("although a defendant has a due process right to be free of arbitrary or capricious charging decisions, there is no judicial remedy to correct such violations").

## II. *Ineffective Assistance of Counsel*

Robinson claims that Nees was incompetent in his representation because he failed to investigate the case properly, to file a timely motion for continuance, to confer with his client to elicit matters of defense, to obtain defense witnesses for trial, and to advise Robinson to file motions under Fed. R.Crim.P. 29 and 33. Robinson also contends that his attorney was unfamiliar with federal criminal procedure and practice.

■ Generally, ineffective assistance of counsel claims are more properly raised by collateral attack on the conviction under 28 U.S.C. § 2255. *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). Such claims, however, may be reviewed on direct appeal in two instances: 1) when the record on appeal is sufficiently developed to permit review and determination of the issue, *United States v. Anderson,* 850 F.2d 563, 565 (9th Cir. 1988), or 2) when the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel, *United States v. Rewald,* 889 F.2d 836, 859 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990).

Here, the record on appeal is not sufficiently developed to permit review and res-

olution of the issue. Nees knew of possible defense witnesses, but on the date of the trial he had interviewed only one witness. On the other hand, Robinson did not provide Nees with the witnesses' names until two weeks before trial. Additional facts must be developed to determine whether Nees took proper steps to investigate the case before trial and to determine the extent of Robinson's cooperation with Nees. Therefore, we hold that Robinson's claim of ineffective assistance of counsel may be only raised by collateral attack.

### III. *Denial of Continuance*

Robinson argues that the district court erred in denying a continuance of his trial. Nees had requested a continuance, but this request had been denied. Robinson moved the court to relieve Nees as his attorney of record. Robinson claims that by denying Nees' motion for a continuance, the district court forced him either to go to trial with an unprepared attorney or to represent himself at trial.

■■■ We review a decision to grant or deny a continuance for an abuse of discretion. *United States v. Studley*, 783 F.2d 934, 938 (9th Cir.1986). In determining whether the denial was fair and reasonable, several factors must be considered:

> whether the continuance would inconvenience witnesses, the court, counsel, or the parties; whether other continuances have been granted; whether legitimate reasons exist for the delay; whether the delay is the defendant's fault; and whether a denial would prejudice the defendant.

*Id.* In the instant case, the district court allowed Robinson almost one year, April 28, 1989 to March 26, 1990, and the services of three attorneys to prepare his defense. Robinson had already been given two previous continuances of trial. Any further delay would have inconvenienced the court, the government, and the government's thirteen witnesses. Moreover, Robinson might have been responsible for the delay in that he had provided Nees with the witnesses' names only two weeks before trial. In any event, the denial would not have prejudiced

Robinson because Nees had at least two days to contact additional witnesses while the government presented its case. Furthermore, before the court granted Robinson's motion to relieve Nees, it cautioned Robinson regarding the complexities of litigation. Robinson nonetheless fired Nees. The court also appointed Nees as standby counsel during the trial to ensure Robinson's representation if Robinson were removed from court. Given these facts, the district court did not abuse its discretion in denying a continuance.

### IV. *Conviction on Count II*

■■■ Robinson claims there was insufficient evidence for a finding of guilt because of a controversy regarding the chain of custody of the cocaine bags introduced at trial. On August 17, 1988, upon searching the apartment rented by Robinson, the police seized cocaine found in a cereal box which had Robinson's fingerprints on it. The police also seized cocaine base found in the pocket of a coat in the bedroom closet. At trial, four bags of cocaine and cocaine base were introduced and admitted into evidence without objection from Robinson. After submission of the case, the jury found a discrepancy focusing on the date of seizure. Two bags of cocaine, Government Exhibits 4 and 4(c), reflected a date of seizure of August 17, 1988, while the other two bags, Exhibits 4(a) and 4(b), reflected a date of seizure of August 13, 1988. The district court conferred with the parties and, without commenting on the evidence, directed the jury to resolve the conflict. The court, however, pointed out to the jury that based on the undisputed testimony, the date of the arrest and seizure of the cocaine evidence was August 17, 1988. Robinson bases his claim of insufficient evidence on this incident.

As this issue was raised for the first time on appeal, our review is for plain error. *See* Fed.R.Evid. 103(d); *United States v. Hernandez*, 876 F.2d 774, 777 (9th Cir.), *cert. denied*, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989).

The government concedes that there is a discrepancy regarding the date of seizure

placed on the evidence bags. A defect in the chain of custody, however, goes to the weight to be afforded to the evidence. *United States v. Candoli*, 870 F.2d 496, 509 (9th Cir.1989). In the instant case, there was sufficient testimonial evidence at trial to link the cocaine bags to the date of Robinson's arrest. The cocaine evidence presented at trial was seized on August 17, 1988, from an apartment rented by Robinson. It was turned over to a Sacramento police officer present at the scene on August 17, 1988. The officer took custody of the evidence and booked it into the property room of the police department that same day. The cocaine evidence was analyzed by a criminalist at the county crime lab and subsequently brought to court for the trial. After considering all the evidence regarding the chain of custody, the jury acquitted Robinson on count I involving the cocaine base found in the pocket of the coat in the bedroom closet. The coat was never seized, and the jury was not convinced beyond a reasonable doubt that the evidence was linked to Robinson. The jury, however, rendered a guilty verdict on Count II involving the cocaine found in the cereal box with Robinson's fingerprints on it. The jury's verdict indicates that it believed, beyond a reasonable doubt, that the misdated cocaine evidence was seized on August 17, 1988, the day Robinson was arrested. We "must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." *United States v. Gillock*, 886 F.2d 220, 222 (9th Cir.1989). Therefore, we affirm Robinson's conviction on Count II for possession with intent to distribute cocaine.

## V. *Sentencing*

Robinson also challenges the district court's computation of his sentence. For sentencing purposes, the district court considered Robinson's prior criminal convictions for accessory to a robbery, battery on a peace officer, three counts of robbery and two counts of first degree burglary.

Section 4B1.1 of the Sentencing Guidelines provides in pertinent part that

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov. 1989) (hereinafter U.S.S.G.). A crime of violence is "any offense ... punishable by imprisonment for a term exceeding one year that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling...." U.S.S.G. § 4B1.2(1). The district court found that Robinson qualified as a career offender because he had three prior felony convictions for crimes of violence which included a battery on a peace officer and robbery/burglaries on two separate occasions.

### A. Battery on a Peace Officer

In 1980, Robinson was convicted of battery on a peace officer. The sentencing court suspended the imposition of sentence and placed Robinson on three years probation, subject to serving the first nine months in jail. In 1982, following a plea of guilty to possession of a hypodermic needle, the court revoked Robinson's probation. In 1984, based on convictions for five counts of burglary and robbery, the court terminated Robinson's probation as unsuccessful.

In 1980, battery on a peace officer was punishable by imprisonment in the county jail not exceeding one year or by imprisonment in the state prison for a term of sixteen months, two years, or three years. Cal.Penal Code §§ 243, 18. Therefore, subject to the discretion of the sentencing court, battery on a peace officer was either a felony or a misdemeanor. Robinson argues that battery on a peace officer was

made a misdemeanor by virtue of the sentence he received.

■ We review *de novo* the district court's determination of whether a given prior conviction falls within the scope of the Sentencing Guidelines. *United States v. Davis*, 932 F.2d 752, 763 (9th Cir.1991) (quoting *United States v. Gross*, 897 F.2d 414, 416 (9th Cir.1990)). The district court's factual findings relating to prior convictions are reviewed for clear error. *Davis*, 932 F.2d at 763.

■ Under California law, where the offense is alternatively a felony or misdemeanor, it is regarded as a felony for every purpose until judgment. *People v. Banks*, 53 Cal.2d 370, 387, 1 Cal.Rptr. 669, 348 P.2d 102 (1959). Section 17(b) of the California Penal Code, however, states, in pertinent part, that such an offense is a misdemeanor for all purposes:

> (1) after a judgment imposing a punishment other than imprisonment in the state prison.
>
> .    .    .    .    .
>
> (3) when the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.

Cal.Penal Code § 17(b). Robinson's situation does not fall under either of these circumstances. The court granted probation and suspended the imposition of sentence. Clearly, "[a]n order granting probation is not a judgment." *People v. Smith*, 195 Cal.App.2d 735, 737, 16 Cal.Rptr. 12 (1961). Furthermore, when a sentencing court grants probation after a conviction, it may suspend the imposition of sentence, in which case no judgment of conviction is rendered, or it may impose sentence and order its execution to be stayed. In the latter case only, a judgment of conviction is rendered. *People v. Arguello*, 59 Cal.2d 475, 476, 30 Cal.Rptr. 333, 381 P.2d 5 (1963). In Robinson's case, the court suspended the imposition of sentence. Thus, the court never entered a judgment. Furthermore, the court never declared Robin-

son's offense to be a misdemeanor, either when it granted probation or anytime thereafter. Because the requirements of § 17(b)(1) and (3) of the California Penal Code were not met, we agree with the district court's holding that Robinson's prior conviction for battery on a peace officer was a felony.

Robinson further argues that the battery on a peace officer is not a crime of violence because of the particular facts underlying his offense. We review *de novo* the district court's construction and interpretation of the Sentencing Guidelines. *United States v. Carvajal*, 905 F.2d 1292, 1295 (9th Cir.1990).

■ In determining whether an offense is a "crime of violence," the plain language of the Guidelines requires a sentencing court to examine whether the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another," or "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1). Consistent with such language, this Circuit has construed U.S.S.G. § 4B1.2 to require "an analysis of the elements of the crime charged *or* whether the actual charged 'conduct' of the defendant presented a serious risk of physical injury to another." *United States v. Sahakian*, 965 F.2d 740, 742 (1992) (emphasis added). *See also United States v. Selfa*, 918 F.2d 749, 751 (9th Cir.) (observing that the elements of the crimes of which the defendant was previously convicted, and not the particular conduct of the defendant on the day the crimes were committed, should control the interpretation of § 4B1.1), *cert. denied*, — U.S. —, 111 S.Ct. 521, 112 L.Ed.2d 532 (1990). Thus, Robinson's reliance on contrary authority from a sister circuit is misplaced. *See United States v. Terry*, 900 F.2d 1039, 1042 (7th Cir.1990) (affirming district court's exploration of underlying facts of a prior conviction, in applying § 4B1.2(1), to determine whether the conduct for which the defendant was convicted involved the substantial risk that force may have been used). In this case, battery includes as an element "the willful

and unlawful use of force or violence upon the person of another." Cal.Penal Code § 242 (West 1988). We therefore conclude that battery on a peace officer, the crime for which Robinson was convicted, is a crime of violence for the purposes of determining Robinson's career offender status under U.S.S.G. § 4B1.1.

### B. Robbery/Burglaries

Robinson contends that his convictions of three counts of robbery and two counts of first degree burglary were four related cases and should constitute one prior conviction. We need not address this issue because, in any event, Robinson has two prior convictions for crimes of violence, namely the battery of a peace officer and the robbery/burglary convictions, which qualify him as a career offender. Consequently, the offense level for Robinson's instant convictions remains at 34 with a criminal history category of VI. Accordingly, we affirm Robinson's sentence.

### VI. *Right to Maintain Originally Appointed Appellate Counsel*

■ Attorney Jesse Kaplan originally filed a notice of appeal for Robinson. Later, the court appointed Scott Tedmon to represent Robinson in the appeal. Robinson argues that Kaplan should have remained as appellate counsel, that the trial court interfered with this right, and that Kaplan's removal has tainted his appeal. Robinson not only fails to state where a right to maintain an originally appointed counsel originates, but he does not state how his appeal has been tainted. Robinson's claim is without merit.

### CONCLUSION

As the United States Attorney's Office exercised proper discretion to prosecute Robinson in federal court, we find no due process violation. We also hold that Robinson's claim of ineffective assistance of counsel may only be raised by collateral attack and that the district court did not abuse its discretion in its denial of the requested continuance. Furthermore, there was sufficient evidence to support Robinson's conviction for possession of cocaine. Finally, we find that the district court properly computed Robinson's sentence.

Robinson's conviction and sentence are AFFIRMED.